## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

---

Jacksonville Realty LLC,

      Plaintiff,

v.                                          Case No. 4:23-cv-1131

Certain Underwriters at Lloyd's,

      Defendants.

---

## ORIGINAL COMPLAINT

Plaintiff Jacksonville Realty LLC ("Jacksonville Realty"), for its Complaint against Defendants Certain Underwriters at Lloyd's ("Defendants"), states and alleges the following:

## PARTIES

1.    Jacksonville Realty is an Indiana limited liability company with a registered address at 10689 North Pennsylvania Street, Suite 100, Indianapolis, Indiana 46280.

2.    Defendants are business entities organized and existing under the laws of Great Britain and Wales, and are subscribing Underwriters participating through Syndicate(s) organized under the laws of the United Kingdom, doing business in London, England, at Lloyd's of London. Defendants subscribe to Policy No. SUAFEO2124-2201 (the "Policy") issued to non-party Miller Title LLC ("Miller Title") as the insured thereunder.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(2) because the parties are citizens of a state and citizens or subjects of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over Defendants because they purposely availed themselves of the privilege of conducting business activities in Texas by issuing the Policy in Texas and by sending communications to the insured in Texas, including Defendants' denial of insurance coverage.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this lawsuit relates to an insurance policy that was issued to the insured in this District.

6.     The Policy has a "Service of Suit Clause" that provides, in relevant part, as follows:

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

**David L. Koury**
**BATES CAREY LLP**
**191 North Wacker Drive, Suite 2400**
**Chicago, IL 60606**
**Telephone: 312-762-3226**
**Facsimile: 312-762-3200**
**dkoury@batescarey.com**

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true

and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

(Bold in original).

## BACKGROUND FACTS

### I.    MILLER TITLE'S FAILURE AS ESCROW AGENT

#### A.    The Agreement

7.    On May 23, 2022, Jacksonville Realty and IBF Retail I, LLC, as successor-in-interest to IBF Properties, LLC ("IBF"), executed a Purchase and Sale Agreement ("Agreement") for the purchase of property located at 6701 Boone Avenue North, Brooklyn Park, Minnesota 55428 ("Property").  The Agreement provided that IBF would pay Jacksonville Realty the total purchase price of $25,500,000 for the Property.

8.    Section 2(a) of the Agreement expressly obligated Miller Title (defined as the "Title Company") to "serve as the parties' joint and mutual escrow agent."  Section 2(a) also obligated IBF, within three business days of the Agreement's execution, to deposit $1,000,000 of the purchase price with Miller Title as an earnest money deposit to be held in escrow:

> Not later than three (3) business days after the Effective Date, Buyer shall deposit One Million and No/100 Dollars ($1,000,000.00) as an earnest money deposit (the "***Earnest Money***") with Miller Title Texas, 310 East 1-30 Suite M106C, Garland, Texas 75043, Attn: Tewanza Williams - Branch Manager/Escrow Officer, (972) 982-0078, tewanza@millertitletx.com) (the "***Title Company***"). *Title Company shall also serve as the parties' joint and mutual escrow agent*.

(Bold with italics in original; underling with italics added).  IBF was obligated to pay the balance of the purchase price to Miller Title on the closing date (*id*. § 2(b)), which was originally to occur on or before the thirtieth calendar day after the Agreement's execution (*id*. § 8).

9.      Section 3 of the Agreement explicitly provided that the earnest money deposit held by Miller Title shall be "nonrefundable" and that Miller Title shall dispose of the earnest money deposit, plus accrued interest, only as provided in the Agreement:

> ***The Earnest Money shall be nonrefundable*** upon deposit with Title Company, except as otherwise provided herein. If the purchase and sale hereunder is consummated, then the Earnest Money shall be applied to the Purchase Price at Closing. In all other events, ***the Earnest Money shall be disposed of by Title Company as provided in this Agreement***. Upon receipt of a completed and executed Form W-9 from Buyer, Title Company shall invest the Earnest Money in a federally insured interest-bearing account for the benefit of Buyer at a bank deemed appropriate by Title Company. All interest earned on the Earnest Money is part of the Earnest Money, to be applied or disposed of in the same manner as the Earnest Money under this Agreement.

(Emphasis added).

10.     Section 12 of the Agreement provided that, upon IBF's breach of the Agreement, Jacksonville Realty could terminate the Agreement by written notice to IBF and immediately receive the Earnest Money as liquidated damages:

> If Buyer breaches this Agreement, Seller [*i.e.*, Jacksonville Realty] shall have the right to elect to (i) terminate this Agreement by written notice to Buyer [*i.e.*, IBF], ***whereupon the Earnest Money shall immediately be paid to Seller as liquidated damages*** and, thereafter, the parties shall have no further rights or obligations hereunder except for obligations which expressly survive the termination of this Agreement, or (ii) waive the default or breach and proceed to close the transaction.

(Emphasis and bracketed information added).

11.     Miller Title expressly consented "to act as the escrow agent for sale of the Property in accordance with the terms of this Agreement and agree[d] to comply with all the terms of this Agreement, including but not limited to, Sections 3 [regarding the earnest money deposits] and 5 of the Agreement," as shown here:

## CONSENT OF TITLE COMPANY

Miller Title Texas consents to act as the escrow agent for sale of the Property in accordance with the terms of this Agreement and agrees to comply with all the terms of this Agreement, including but not limited to, Sections 3 and 5 of the Agreement, and the requirements of Section 6045(e) of the Internal Revenue Code.

MILLER TITLE TEXAS

By: _TEWANIZA WILLIAMS_

Its: _ESCROW Officer_

Date: May 24, 2022

**B.**    **The Three Amendments to the Agreement**

12.    On June 28, 2022, Jacksonville Realty and IBF executed a First Amendment to Purchase and Sale Agreement ("First Amendment").  The First Amendment (1) obligated IBF to deposit an additional $1,000,000 as an earnest money deposit with Miller Title by June 29, 2022, which "shall be treated in all respects under the Agreement in the same manner as the Earnest Money," and (2) provided that the closing of the purchase transaction shall occur on or before July 6, 2022.

13.    On July 5, 2022, Jacksonville Realty and IBF executed a Second Amendment to Purchase and Sale Agreement ("Second Amendment"). The Second Amendment (1) obligated IBF to deposit an additional $250,000 as an earnest money deposit with Miller Title by July 6, 2022, which "shall be treated in all respects under the Agreement in the same manner as the Earnest Money," and (2) provided that the closing of the purchase transaction shall occur on or before July 8, 2022.

14.    On July 11, 2022, Jacksonville Realty and IBF executed a Third Amendment to Purchase and Sale Agreement ("Third Amendment").  The Third Amendment (1) obligated IBF to deposit an additional $1,000,000 as an earnest money deposit with Miller Title on July 11, 2022,

which "shall be treated in all respects under the Agreement in the same manner as the Earnest Money," and (2) provided that the closing of the transaction shall occur on or before July 19, 2022.

        C.     **Earnest Money deposits received by Miller Title**

15.     IBF made four separate earnest money deposits to Miller Title under the Agreement and amendments thereto.

16.     First, on May 27, 2022, as required by Section 2(a) of the Agreement, IBF deposited $1,000,000 as an earnest money deposit with Miller Title to be held in escrow.

17.     Second, on June 29, 2022, as required by the First Amendment, IBF made an additional earnest money deposit of $1,000,000 with Miller Title to be held in escrow.

18.     Third, on July 6, 2022, as required by the Second Amendment, IBF deposited another $250,000 in earnest money with Miller Title to be held in escrow.

19.     Fourth, on July 13, 2022, IBF deposited an additional $500,000 as an earnest money deposit with Miller Title to be held in escrow, which was half of the $1,000,000 required by the Third Amendment.

20.     Thus, as of July 13, 2022, pursuant to the express terms of the Agreement and amendments thereto, Miller Title held in escrow a total of $2,750,000 in earnest money deposits (the "Earnest Money"), which, as mandated by the Agreement, "shall be disposed of by Title Company as provided in this Agreement."

        D.     **Jacksonville Realty's termination of the Agreement**

21.     Not only was IBF's July 13, 2022 earnest money deposit two days late, but it was only half of the additional $1,000,000 earnest money deposit required by the Third Amendment. Accordingly, IBF materially breached the Agreement by failing to pay in full the $1,000,000 earnest money deposit by July 11, 2022, as required by the Third Amendment.

22.     IBF also failed to pay the balance of the purchase price and close on the purchase of the Property by the July 19, 2022 closing date specified in the Third Amendment.  Accordingly, IBF also materially breached the Agreement by failing to timely close on the Property purchase.

23.     Pursuant to Section 12(b) of the Agreement, Jacksonville Realty elected to terminate the Agreement due to IBF's material breaches.

24.     On July 20, 2022, Jacksonville Realty notified IBF in writing of its breach of the Agreement and Jacksonville Realty's exercise of its right to terminate.

25.     On July 20, 2022, pursuant to Section 3 and Section 12(b) of the Agreement, Jacksonville Realty also notified Miller Title in writing of IBF's breach of the Agreement and requested that Miller Title immediately release the Earnest Money to Jacksonville Realty pursuant to the Agreement.

26.     On July 22, 2022, Jacksonville Realty served IBF with a Notice of Termination pursuant to Minn. Stat. § 559.21, subd. 3.  IBF failed to timely cure the defaults identified therein.

**E.     Miller Title's failure to pay the Earnest Money to Jacksonville Realty**

27.     As a result of IBF's breaches and Jacksonville Realty's termination of the Agreement, Jacksonville Realty was entitled to immediate payment of the Earnest Money, plus accrued interest, held by Miller Title in escrow as liquidated damages pursuant to Sections 3 and 12(b) of the Agreement.

28.     Contrary to its obligations, Miller Title refused to pay the Earnest Money to Jacksonville Realty.

29.     After Miller Title did not respond to the July 20, 2022 letter, Jacksonville Realty made another written demand upon Miller Title for the immediate release of the Earnest Money on August 22, 2022.

30.     Miller Title responded the next day, August 23, 2022, and refused to release the Earnest Money to Jacksonville Realty.  As the sole stated basis for its refusal to comply with its obligations to release the Earnest Money to Jacksonville Realty, Miller Title referenced fraud allegations against IBF in an unrelated lawsuit that has nothing whatsoever to do with the Agreement or the Property.

31.     On August 24, 2022, Jacksonville Realty sent a third letter to Miller Title demanding release of the Earnest Money.

32.     Miller Title neither responded to the August 24, 2022 letter nor paid the Earnest Money to Jacksonville Realty.

## II.     JACKSONVILLE'S JUDGMENT AGAINST MILLER TITLE

33.     On August 30, 2022, Jacksonville Realty commenced a lawsuit against Miller Title in Hennepin County (Minnesota) District Court, asserting claims for breach of contract, declaratory judgment, and unjust enrichment (the "Lawsuit").  A true and correct copy of the Verified Complaint with Exhibits 1-13 in the Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.

34.     On October 11, 2022, Miller Title, represented by counsel appointed by Defendants, filed an Answer to the Complaint.  A true and correct copy of the Answer is attached hereto as **Exhibit B** and incorporated herein by reference.  Among other things, Miller Title advised for the first time in the Answer that it had transferred the "nonrefundable" Earnest Money that "shall be disposed of by Title Company as provided in th[e] Agreement" to a non-party to the Agreement upon IBF's unilateral request.  Ex. B ¶ 28 ("[U]pon the direction and representation by IBF, and with the knowledge and approval of Benefit Street Partners Realty Operating Partnership, L.P., and/or Benefit Street Partners, LLC, or an affiliate of them…, Defendant transferred funds

by wire to BSP on July 8 and July 11, 2022"); *id.* ¶ 34 ("Defendant…states that it delivered funds

by wire, as directed by IBF and knowingly received by BSP, on July 8 and 11, 2022").

35.     On February 17, 2023, the district court granted summary judgment in favor of

Jacksonville Realty and entered judgment in its favor and against Miller Title in the amount of

$2,750,000, together with interest, costs and disbursements (the "Judgment").  A certified copy of

the summary judgment order and judgment is attached hereto as **Exhibit C** and incorporated herein

by reference.

36.     The Judgment was docketed against Miller Title on March 10, 2023.  A true and

correct copy of the Notice of Docketing of Judgment is attached hereto as **Exhibit D** and

incorporated herein by reference.

37.     Miller Title did not appeal the summary judgment order and Judgment within the

60-day time period to do so under Minnesota law.  Thus, the Judgment is final and non-appealable.

## III.    DEFENDANTS' REFUSAL TO PROVIDE COVERAGE UNDER THE POLICY

38.     Defendants issued the Policy to Miller Title in Texas on February 24, 2022, for the

policy period of February 15, 2022 through February 15, 2023.  A true and correct copy of the

Policy is attached hereto as **Exhibit E** and incorporated herein by reference.  The Policy provides

title agents errors and omissions coverage and, as such, provides coverage for the Judgment.

39.     On April 11, 2023, Defendants' counsel submitted a letter to Miller Title advising

that Defendants "decline any duty to defend or indemnify Miller Title or any other party insured

under the Policy."  A true and correct copy of the April 11, 2023 declination letter is attached as

**Exhibit F** and incorporated herein by reference.

40.     On August 25, 2023, Jacksonville Realty responded to Defendants' April 11, 2023

declination letter.  A true and correct copy of Jacksonville Realty's August 25, 2023 response letter

is attached hereto as **Exhibit G** and incorporate herein by reference.

41.     Defendants did not respond to Jacksonville Realty's August 25, 2023 response letter.

42.     Jacksonville Realty has had several calls with Defendants' representative identified in the Policy's Service of Suit Clause. Despite demand that Defendants remit the per occurrence limit under the Policy, which demand is hereby renewed, Defendants have not paid any portion of the Judgment under the terms of the Policy.

## CONDITIONS PRECEDENT

43.     Pursuant to Federal Rule of Civil Procedure 9(c), Plaintiff would respectfully show that all conditions precedent to this lawsuit have occurred, have been performed, or have been waived.

## CAUSE OF ACTION

## COUNT I – BREACH OF CONTRACT

44.     Jacksonville Realty restates and realleges the preceding paragraphs as though fully set forth herein.

45.     The Policy is a valid and binding contract.

46.     As Miller Title's judgment creditor and intended third-party beneficiary, Jacksonville Realty has standing to enforce the Policy.

47.     Defendants' failure and refusal to pay the Judgment constitutes a material breach of the Policy.

48.     As a direct and proximate result of Defendants' breach of contract, Jacksonville Realty has suffered damages in the amount of $2,750,000, plus accrued interest.

## COUNT II – ATTORNEYS' FEES

49.     Jacksonville Realty restates and realleges the preceding paragraphs as though fully set forth herein.

10

50.    The Policy is a valid and binding contract.

51.    As an intended third-party beneficiary and/or judgment creditor, Jacksonville Realty is entitled to the benefits of the Policy.

52.    Jacksonville Realty was required to engage legal representation in order to redress its losses.

53.    Jacksonville Realty is entitled to recover from Defendants its reasonable attorneys' fees arising out of this coverage dispute under multiple authorities. *See, e.g.*, TEX. CIV. PRAC. REM. CODE § 38.001(8) (statutory basis for recovery of attorneys' fees in breach of contract case); Fed. R. Civ. P. 54(d)(2).

## PRAYER FOR RELIEF

WHEREFORE, Jacksonville Realty respectfully requests that this Court grant the following relief:

1.    Enter judgment in favor of Jacksonville Realty and against Defendants, granting to Jacksonville Realty any and all monetary and other remedies sought herein;

2.    Award Jacksonville Realty all costs and expenses incurred herein, including attorneys' fees and costs incurred in this Court and any appellate court;

3.    Award Jacksonville Realty pre-judgment and post-judgment interest, as allowed by law; and

4.    Award Jacksonville Realty such other, further and different relief to which the Court determines it is entitled.

DATED:  December 20, 2023                **SAUNDERS, WALSH & BEARD**

By  _/s/ Mark D. Johnson_
    MARK D. JOHNSON
    Texas Bar No. 10770175
    ALEXANDER N. BEARD
    Texas Bar No. 01970000
    Craig Ranch Professional Plaza
    6850 TPC Drive, Suite 210
    McKinney, Texas 75070
    Mark.Johnson@SaundersWalsh.com
    Alex@SaundersWalsh.com
    Telephone: 214-919-3555
    Facsimile: 214-945-4060

    and

    Jason R. Asmus (*pro hac vice* forthcoming)
    Jordan L. Weber (*pro hac vice* forthcoming)
    2200 IDS Center
    80 South 8th Street
    Minneapolis, MN 55402
    jasmus@taftlaw.com
    jweber@taftlaw.com
    Telephone: (612) 977-8400
    Fax: (612) 977-8650

    **COUNSEL FOR PLAINTIFF**
    **JACKSONVILLE REALTY LLC**

130275293v2